STATE OF MAINE                              SUPERIOR COURT
KENNEBEC, ss                                CIVIL ACTION
                                            DOCKET NO. AP-18-65


JOSHUA GRAY,

                Petitioner                  **ORDER ON PETITIONER'S
                                            80C APPEAL**

v.

STATE OF MAINE, DEPARTMENT
OF PUBLIC SAFETY,

                Respondent


Before the Court is Petitioner Joshua Gray's 80C petition for review of the Department of Public Safety's (the "Department's") denial of his application for a Professional Investigator's License. For the following reasons, the petition is granted.

## Background

Joshua Gray is licensed as a Professional Investigator in Tennessee, Vermont, Massachusetts and New Hampshire. On January 26, 2018, Gray applied for an investigator's license in Maine. As part of its review of Gray's application, the Department conducted a background investigation which included an investigation into Gray's use of social media. This investigation revealed that Gray has published numerous statements concerning a fatal police shooting which occurred in Vassalboro in 2017. The dominant theme of these statements is that an officer who was involved in the shooting, Lt. Scott Ireland, is a "dirty cop" whose career has been plagued by lying, internal affairs trouble and abuse of power issues and who committed first degree murder while he was "likely drunk." As a result of its investigation, the Department concluded that Gray had made statements which demonstrate that he "lack[s] the requisite competency and fitness of character to act as a PI in the State of Maine." Consequently, the

1

Department denied Gray's application on August 31, 2018. Gray's attorney received a copy of the denial on September 14, 2018 and on October 11, 2018 Gray filed a petition for review of the denial of his application.

## Standard of Review

The Court reviews an administrative agency's decision for an abuse of discretion, error of law, or findings not supported by the evidence. *Uliano v. Bd. of Envtl. Prot.*, 2009 ME 89, ¶ 12, 977 A.2d 400 (citation omitted). "An administrative decision will be sustained if, on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." *Id.* (quoting *CWCO, Inc. v. Superintendent of Ins.*, 1997 ME 226, ¶ 6, 703 A.2d 1258). The party seeking to vacate an agency decision bears the burden of persuasion. *Kelley v. Me. Pub. Emps. Ret. Sys.*, 2009 ME 27, ¶ 16, 967 A.2d 676. "When an agency concludes that the party with the burden of proof failed to meet that burden, [the court] will reverse that determination only if the record compels a contrary conclusion to the exclusion of any other inference." *Kelley v. Me. Pub. Emples. Ret. Sys.*, 2009 ME 27, ¶ 16, 967 A.2d 676 (quotation omitted).

## Discussion

The State of Maine requires that professional investigators obtain a professional investigator's license from the Chief of the Maine State Police. 32 M.R.S. § 8104. In order to obtain an investigator's license, an applicant must demonstrate that they possess good moral character. *Id.* § 8105(4). Further, the Chief may refuse to issue a license if the applicant has:

> A. Engaged in conduct that evidences a lack of ability or fitness to discharge the duty owed by the licensee to a client or the general public; or

> B. Engaged in conduct that evidences a lack of knowledge or an inability to apply principles or skills to carry out the practice for which the person is licensed.

32 M.R.S. § 8113(6).

2

In this case, the Chief of the Maine State Police determined that "since early 2017, [Gray had] made postings on social media platforms (including on [his] business' official Facebook page) that include statements that are materially false." (R. 4.) The Chief further determined that "[b]y publishing such misleading statements publicly, [Gray has] demonstrated conduct that brings into question [his] ability to competently investigate and then report investigative findings with accuracy, objectivity, and without bias." *Id.* The Chief reasoned that "[f]rom a consumer protection perspective, these findings . . . are of great concern." *Id.* Consequently, the Chief denied Gray's license based on his findings that Gray "lack[s] the requisite competency and fitness of character to act as a PI in the State of Maine." (R. 4.)

Gray argues that denying his application on the basis of his social media articles and posts violates his right to free speech and thus constitutes an error of law. Gray asserts that his social media postings are statements of opinion which were not likely to incite violence and that they were made in his capacity as a private citizen. Because, in his view, "[a]ll speech, in any form and by any method, has always been ruled as protected except speech which incites imminent violence," Gray argues that his social media posts cannot be considered when determining whether he has good moral character.

The Department argues that many of Gray's statements are demonstratively false and that this supports a finding that Gray is dishonest, not able to accurately report facts, and is incompetent to act as a professional investigator. The Department also points out that defamatory speech is not protected by the First Amendment. *See Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245-46 (2002) ("As a general principle, the First Amendment bars the government from dictating what we see or read or speak or hear. Freedom of speech of course has its limits; it does not embrace certain

3

categories of speech, including defamation, incitement, obscenity, and pornography produced with real children.")

As a general matter, "[a] State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment." *In re Feingold*, 296 A.2d 492, 498-99 (Me. 1972) (quoting *Schware v. Board of Bar Examiners*, 353 U.S. 232, 238-239 (1957)). And as a matter of First Amendment principles, a Government may not regulate speech based upon the motivating ideology, opinion or perspective of the speaker. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995).

In this case, the Department's Notice of Denial shows that Gray's application was denied because of the statements that Gray made on social media. Further, the notice shows that the Department's denial was based upon its disagreement with the viewpoints expressed in these statements. The Department reasons that Gray should not receive a private investigator's license as the statements show that he is incompetent and lacks the necessary fitness of character. This finding is in turn based solely on what the Department characterizes as "materially false" statements that Gray has made publicly. In other words, it is based on the Department's disagreement with Gray's publicly stated opinion that the State Trooper is a dirty cop with a history of internal affairs problems who committed murder.

In its court filings the Department argues that the denial was not actually based upon Gray's public opinions about police corruption and competency, but rather that it was based on conduct which shows that Gray is unable to investigate with accuracy, objectivity, and without bias. In support of its argument, the Department has provided a spreadsheet compiling Gray's statements and the Department's findings regarding the purported veracity of each statement. Additionally,

4

the Department has also submitted the Attorney General's investigative report on the use of deadly force by the State Police during the 2017 Vassalboro shooting; a memorandum from Lt. Anna Love of the State Police Office of Professional standards stating that Lt. Ireland does not have any history of being disciplined for misconduct; and over 300 pages of statements that Gray has made on social media.

Although the Department has offered evidence which supports its opinion that Lt. Ireland is not guilty of murder and has not been subject to internal affairs discipline', there is no record evidence of the investigative methods Gray employed or the specific information Gray either utilized or ignored in reaching his conclusions about Lt. Ireland and the Maine State Police. Moreover, there is nothing in the record to suggest that whatever Gray did in regards to the shooting was an "investigation" as opposed to him making statements that were understandably perceived by state actors to be false, outrageous and offensive. The Court concludes that the Department's determination that Gray lacks the necessary competency to investigate is based primarily on the fact that Gray has reached opinions or conclusions about Lt. Ireland and the State Police which are completely at odds with the Department's, and which do display a hostile bias toward Lt. Ireland.

Further, although Gray's statements may arguably contain defamatory material,' the Department has overlooked two important considerations which the Court cannot. First, the Court in this Rule 80C appeal is not in any position to adjudicate whether the statements constitute defamation against a public figure. More fundamentally, however, the Maine Supreme Court has

---

' It should be noted that there is no record evidence that Lt. Ireland has not been the subject of internal affairs investigations. The only evidence is that he has not been disciplined as a result of any investigation.

' The parties disagree over whether Gray's statements should be fairly characterized as statements of opinion or statements of fact. *See Lester v. Powers*, 596 A.2d 65, 69 (Me. 1991) (an opinion which does not imply the existence of undisclosed defamatory facts cannot support a claim for defamation).

recognized that statements made about or against public officials, even ones which are "objectively false", inflammatory, or outrageous, are protected by a limited First Amendment privilege. *See Plante v. Long,* 2017 ME 189, ¶ 10, 170 A.3d 24. Because the statements at issue here all concern and pertain to a matter of public importance and public figures - a police shooting, the resulting investigation, and the police officer involved in the shooting - this appeal cannot be resolved in the usual manner by determining if there is competent evidence in the record to support the administrative decision. The Petitioner is making a constitutional argument, which of course is something that can be done in an administrative appeal such as this one. The Court has concluded that the issue therefore becomes what standard the Department is required to apply to the statements in order to determine if Petitioner can be denied a license based on, as the Department frames the issue, his "competence" and "character."

While the Court could not find any Maine case in which a professional license was denied solely based on statements made by the applicant in social media, the Law Court in *Plante* did not just reaffirm and reiterate the limited privilege that applies to allegedly defamatory statements made against public figures. It held that in order to overcome the privilege, a showing must be made by clear and convincing evidence that the statements were made with "actual malice"—i.e., with knowledge that the statements were false or with reckless disregard of their truth or falsity. *Id.* While the Department understandably believes, based on their investigations of Lt. Ireland, that the statements were "materially false," the Law Court clarified in *Plante* that the objective falsity of a statement or statements cannot by itself support a finding of actual malice. *Id.* ¶ 12.

In its notice of denial, the Department does not make any finding whether Petitioner made these statements with knowledge that they were false, or with reckless disregard of their truth or falsity. This means that it has not provided any evidence showing that Gray acted with actual

6

malice when he published his social media statements. Because the Department focused solely on the objective falsity of Gray's statements, it applied the wrong legal standard to determine whether Gray lacks competence and good moral character because he made defamatory or false statements. Consequently, this matter must be remanded to the Department to allow it to determine whether Gray, at the time he published his allegedly defamatory social media posts, "in fact knew that his statements were false or . . . acted with a high degree of awareness of their probable falsity." *Id.* ¶ 10 (quotation omitted).

## Conclusion

For the foregoing reasons, the entry will be:

**The Petitioner's Rule 80 C petition is granted in part. The decision of the Department of Public Safety is reversed and remanded to the Department to conduct an appropriate process or proceeding which would enable it to determine if the Petitioner's statements were made with actual malice as defined by Maine law. The clerk is directed to incorporate this order into the docket by reference. M.R. Civ. P. 79(a).**

Date: 7/18/19

Justice, Superior Court

7